(No. 91-CC-0681–)

DONCHII MALONE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed September 30, 1994.*

DONCHII MALONE, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (LAWRENCE C. RIPPE, Assistant Attorney General, of counsel), for Respondent.

ORDER

SOMMER, C.J.

The Claimant, an inmate with the Illinois Department of Corrections, seeks judgment against the Respondent, State of Illinois, in the sum of $180,000 in compensation for personal injuries sustained by the Claimant while playing basketball at the Joliet Correctional Center. The Claimant's complaint contends that on July 20, 1990, at 2:00 p.m., he was playing basketball in the west segregation yard. While playing basketball, the Claimant contends he slipped on small rocks and sand which had come from the brick wall to which the basketball goal was fastened, and fell against the fence gate. The Claimant contends his left arm landed under the fence gate, and his left wrist was broken. The Claimant contends that the fence gate and the playing area were unsafe.

The Claimant also contends that he was not promptly afforded medical care, but was delayed 10 to 15 minutes in the west segregation area before being taken to the medical center where he was required to wait for over an hour before receiving medical attention. The Claimant contends he was driven to an "outside hospital" where he was required to remain seated in the emergency room for 20 minutes before receiving medical attention. He also contends that after his injury was treated, he received insufficient pain medication. He alleges that he has lost the use of his left arm and left wrist, and is accordingly entitled to substantial damages.

At the hearing in this cause, the Claimant testified that he was first incarcerated in Joliet on September 2, 1988. The incident from which this claim arose occurred July 20, 1990, between 2:00 p.m. and 2:30 p.m. The Claimant was incarcerated in the segregation unit, and after lunch inmates were taken to the yard by correctional officer Lt. Breeding. The inmates, including the Claimant, were allowed to play basketball.

The Claimant stated that on the surface of the yard there was debris from a brick wall upon which the basketball goal is mounted. As the Claimant was playing he fell and he broke his left wrist. He stated that the reason his wrist was broken is that "the gate pushed in," and his hand "went up under the gate." The Claimant testified that the gate was not secure, and that his hand landed "up under the pole, the bottom pole of the gate," and that is the circumstance that caused his wrist to break. The Claimant stated that the gate in question was a standard seven-foot wire gate, the frame of which was made of some type of metal.

The Claimant testified that the game he was playing was a game that involved running and jumping and some physical contact between the people who were participating. In response to questions at the hearing, the Claimant testified that the gate in question was there for security reasons to keep inmates from coming in or going out as they pleased. He also stated that the gate was not designed to provide a landing area for a person who was involved in a vigorous game who might lose his balance or fall to the ground.

On the occasion in question, the Claimant contends that his fall was caused by debris which had fallen from the brick wall onto the surface where the game was being played. The Claimant testified that the wall was not like a flat surface, but consisted of "big old chunks of bricks, that deteriorate onto the surface of the playing area." The Claimant testified that the debris "was all over back there." The Claimant testified that "we sweeps, you know, it out of the way. Usually, we sweeps it out of the way; but it wasn't like it usually be. It wasn't like thick. It was like just from the wall. It is an old wall that was built in the 1800s. So, I guess a little gravel falls. There was like a

sand-like surface, rocks here and there. There was like a sand, like a surface that came off the wall." The biggest debris was maybe a half an inch, and the smallest debris was not as big as the top of a pen. It was like sand on the surface with rocks here and there, according to the Claimant.

The Claimant had played basketball at this location many times. He testified that there was nothing about the condition of the playing surface that he was unfamiliar with. He testified he knew there was loose gravel that had fallen off the wall; and that from time to time the area had been swept up. On the occasion in question, the Claimant testified that the surface material from the wall was not noticeable until he fell. The Claimant stated he never fell before when playing basketball, but that he had seen others fall down many times.

The Claimant testified that when he fell, his arm pushed against the gate; and instead of the gate being secure, the gate pushed out and his arm ended up against the bottom pole. He testified that there was 2½ inches of space under the bottom pole; and that if the space had not been present the accident would not have happened because his arm would not have been able to go up under the pole—it would have landed on the pole. The Claimant stated that a person could have looked at the location and seen that there was a 2½-inch gap beneath the bottom support member of the gate.

After the accident, the Claimant advised correctional officers that he thought his wrist was broken. He testified he waited five minutes before he was taken to the prison hospital. When he arrived at the hospital, he was advised that there was nothing that could be done for him at that location, and that he would have to go to an outside hospital. He testified that he waited at the prison hospital for

an hour and a half or two hours while paperwork was completed. He was given ice to put on his wrist. Eventually, the Claimant was taken to the outside hospital and received a shot. When his wrist was examined at the outside hospital, he was advised that a specialist would have to be called. After a delay of about two hours, the Claimant was seen by Dr. Duffy who is a bone specialist. The Claimant was advised by Dr. Duffy that his wrist was broken badly. Dr. Duffy applied an arm cast for the Claimant; and replaced the arm cast later with another cast. He was in a cast for eight weeks.

The Claimant described the basis of his complaints concerning the medical care he received. The Claimant stated that the people at the medical facility at the prison did not act like there was an emergency. He stated that he received an insufficient amount of Tylenol 3. He stated that the correctional officers acted like they didn't care. The Claimant stated that he went through pain for three days because of the negligence of correctional officers.

At the time of the hearing, the Claimant testified that his wrist was not as painful, but that he could not turn his palm all the way up. He stated that he can't use his wrist to do a lot of things that he wants to do with his wrist. Observation by the Commissioner of the Claimant's use of his injured arm and wrist while handling his papers and testifying indicated that he was successfully able to use the left hand. The Claimant gestured to the Commissioner to demonstrate the limitations of his use of the left hand; and demonstrated that he could not turn his left hand palm-side up, but could only turn the hand approximately half of the distance needed to turn it palm-side up. At the time of hearing, the Claimant stated that he was supposed to be receiving therapy but had not been called to continue the therapy.

The Claimant testified that in his weightlifting activities, he could perform a bench press, but could not perform a "curl." In performing a bench press, the Claimant stated that he would lay on his back and push a barbell straight up and down to and from his chest. The Claimant contended he could lift about 100 pounds in repetitions of 5 sets of 10 lifts. He testified there were some exercises that have to be done "under hand" that he cannot do. He also testified that he engages in boxing, and that the injury has not really affected his ability to box.

The Claimant testified that the correctional officer, present at the time he was injured, made the statement that he had already reported that the gate in question should have been repaired earlier, because if it had not been repaired, "somebody was going to hurt himself."

On cross-examination, the Claimant stated that the wrist in question had been broken first when he was about 13 or 14 years old, and that the original broken wrist healed without loss of use. The Claimant is right-handed. The Claimant testified that in his job as a cellhouse maintenance worker, he has no problems sweeping floors, but does have a problem mopping because of the injury to his left wrist.

Correctional officer Lt. Robert Breeding was called as a witness for the Respondent. Lt. Breeding testified that at the time of the accident, the Claimant was on the first of three "segregation yards." The yard is 20 feet by 24 feet; and the basketball rim is attached to the main prison wall. The area is fenced by a galvanized steel fence topped with razor blade wire. The surface is cement, and there is one gate to go in and out. The gate is padlocked. When the gate is locked, the gate has no movement in it. Lt. Breeding testified that the surface of the playing area is cleaned and brushed every day during good weather in

the summer. Lt. Breeding noticed nothing unusual about the surface of the playing area on the date of the Claimant's injury.

Lt. Breeding's attention to the Claimant's injury was called by a tower officer. Lt. Breeding then noticed that the Claimant was injured and in pain. Lt. Breeding called for keys so that the Claimant could be taken off the yard to obtain medical attention. The process took 5 to 10 minutes. The trip to the medical unit took two or three minutes. After arriving at the medical unit, the medical staff attended to the Claimant; and it was determined that the Claimant would have to go to an outside hospital for medical attention. After having first being checked to see if the Claimant's condition was life-threatening, it was 20 or 25 minutes until the Claimant received additional attention.

Lt. Breeding produced photographs taken of the basketball area on April 24, 1991, in contemplation of the hearing in the Claimant's case. The Respondent's photographic exhibits 1 through 12 were marked and identified, and entered into evidence. Lt. Breeding testified that the space beneath the fence in the gate is one inch, and that there is not sufficient room to put a hand under it.

Lt. Breeding denied making any statement to the Claimant or other inmates concerning the condition of the fence or gate; but admitted that he had made the observation that someone was going to get hurt because the type of basketball that was being played was wild.

Lt. Breeding testified that the gate in the fence in the area in which the Claimant was injured on the date in question was in good repair, and locked.

On cross-examination by the Claimant, Lt. Breeding testified that he knew for a fact that the surface of the

playing area had not been swept on the day in question, because when Lt. Breeding took the Claimant and other inmates to the basketball court, Lt. Breeding did not see the gravel or debris on the ground which needed sweeping. However, Lt. Breeding stated under cross-examination that the debris could have been there. Lt. Breeding unequivocally denied making any statement to the effect that someone needed to fix the gate.

The Respondent offered no other evidence. Neither party filed a brief.

This Court has previously held that if the State provides recreational equipment to inmates, that equipment must be in safe condition. In order for an inmate to recover against the Respondent for injuries in the use of recreational equipment, the Claimant must show that the State somehow breached that duty. (*Terry v. State* (1991), 44 Ill. Ct. Cl. 211, 213.) In *Rosario v. State* (1991), 43 Ill. Ct. Cl. 282, the claimant sought damages for an injury sustained by the claimant during a basketball game. The claimant contended that his foot went through the wooden basketball floor to a depth of four or five inches, causing him to injure his right ankle and break a bone in his upper-right instep. After recognizing that the State has a duty to inmates of penal institutions to maintain reasonably safe conditions, this Court observed as follows:

"° ° ° the existence of a defect is not in itself negligence on the part of the State. (*Palmer v. State* (1964), 25 Ill. Ct. Cl. 1.) The State must be shown to have had actual or constructive knowledge of the defect." *Rosario* at 283.

In the *Rosario* case, the Claimant's injury may have been caused by weak wooden flooring, but this Court indicated that in the absence of direct evidence offered by the Claimant as to the nature of the defect which proximately caused his injury, the Claimant could not prove his claim.

In the present claim, the evidence is in conflict. The Claimant's theory of liability is that a lower portion of the gate to the basketball court was not secure, and that when the Claimant fell during the basketball game, his left hand and arm were permitted, due to the insecurity of the lower portion of the gate, to go under the gate and against a supporting pole, thereby causing the break to the Claimant's left wrist. Additionally, the Claimant contends that there was sand or debris which was on the playing surface which was not noticeable, until after the Claimant's fall. Officer Breeding testified emphatically that there were no loose connections on the gate, and that the fence and gate around the basketball court were in good repair. Pictures taken of the court where correctional officer Lt. Breeding testified that injury took place seemed to show a gate and fence with no obvious defects. The Claimant, on the other hand, contends that the pictures produced by officer Breeding and admitted into evidence are not of the court where he was injured or the fences and gates in question.

Even if the Court were to find that the Claimant's testimony regarding the condition of the lower portion of the gate was more credible than the testimony of correctional officer Lt. Breeding, there was no evidence that the condition of the gate and the playing surface was a dangerous condition about which the Respondent had knowledge, or should have had knowledge. Furthermore, if it is assumed that the lower portion of the gate surrounding the basketball court was not securely fastened, it is doubtful that knowledge of this condition could be said to be knowledge on the part of the Respondent that a dangerous condition existed which, if not corrected, could result in injury to those inmates using the basketball court for recreational purposes. The Claimant's argument is that if a

recreational basketball court has boundaries consisting of fences and gates, then the construction and repair of the fences and gates should be such that if a participant in a basketball game falls against the fences or gates, such fences or gates should be so constructed and maintained as to prevent the occurrence of injury to a person falling during a basketball game. It is clear from the evidence that the fences and gates were for security purposes and were not designed, maintained or repaired so as to furnish a cushion against pressure which might be exerted by the impact of a fall by an inmate using the basketball court.

Therefore, we find that, even given the Claimant's statement of the condition of the gate, there was no obvious defect from which the State could reasonably anticipate an injury to result therefrom. Additionally, the Respondent maintained the court daily; and there was no obvious defect on the surface of the court. Lt. Breeding noticed no debris; and the Claimant noticed nothing until he fell, when he noticed fine particles of sand or rock.

As to the portion of the Claimant's claim relating to the medical care provided to the Claimant, it is the finding of this Court that the claim be denied. Judge Burke in writing the opinion of this Court in *Pink v. State* (1991), 44 Ill. Ct. Cl. 295, opined that in cases arising from complaints of medical care, the Claimant must offer expert testimony or other evidence to prove the allegations of the complaint. Where the allegations of a Claimant are essentially allegations of medical malpractice, a Claimant must establish a breach of duty through expert testimony; and establish that the Respondent deviated from the required standard of care. In the case at bar, the Claimant has not shown the standard of care applicable, and has failed to show any obvious deviation from steps to provide

the Claimant with reasonable medical care. Accordingly, the Claimant has failed to meet his burden of proof.

It is therefore ordered that this claim is denied.